**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

SUCHA SAUDA, LLC.,

      Plaintiff.

v.

SELECTIVE INSURANCE COMPANY
OF SOUTH CAROLINA

      Defendant.

Case No.: 4:25-cv-1025-CDP

### DEFENDANT SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA'S SUGGESTIONS IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE THE OPINIONS OF STEVEN J. WOHLSCHEID

Defendant Selective Insurance Company of South Carolina ("SICSC"), by and through counsel, states the following for its Suggestions in Support of its *Daubert* Motion to Exclude the Opinions of Steven J. Wohlscheid.

"We do not allow witnesses to tell juries that in their expert opinion something happened simply because it is possible." *Johnson v. Avco Corp.*, 702 F.Supp.2d 1093, 1108–09 (E.D. Mo. 2010). The Court's obligation to protect jurors from "subjective speculation" masquerading as scientific knowledge has been the central goal of the *Daubert* standard since it was adopted more than thirty years ago. That standard and the Court's gatekeeping role should be exercised to exclude the testimony of Steven J. Wohlscheid.

Mr. Wohlscheid opines that hail damaged Plaintiff Sucha Sauda, LLC's ("Sucha Sauda") TPO roof on April 1, 2024.[1] Mr. Wohlscheid advances this opinion even though neither he nor anyone under his supervision inspected the roof, and he did not personally see or identify hail

---

[1] "TPO" is TPO (Thermoplastic Polyolefin), a popular, single-ply reflective roofing membrane used primarily on commercial flat roofs, consisting of a synthetic polymer base, polyester reinforcement, and a UV-resistant top layer.

4908-0402-3465.3

damage on the roof. Instead, his opinions are premised on photographs purportedly identifying hail damage on the roof taken by an unknown third party. Mr. Wohlscheid admitted he does not know who took the photographs, when the photographs were taken, nor the methodology used to identify the hail damage purportedly depicted in the photographs. In short, Mr. Wohlscheid undertook no expert analysis in issuing his opinion. He looked at photographs purporting to show hail damage – an activity that can be undertaken by every member of the jury.

Because Mr. Wohlscheid's "opinions" are based on an unreliable factual foundation, include no scientific methodology, and are rife speculation, his opinions should be excluded.

## I. <u>Introduction</u>

Sucha Sauda filed suit on July 10, 2025, alleging breach of an insurance policy issued by SICSC and for vexatious refusal to pay a claim related to alleged hail and wind damage to the TPO roof of a commercial property it owns. On December 31, 2025, Sucha Sauda served its Fed. R. Civ. P. 26(a)(2) Expert Witness Disclosures, disclosing Mr. Wohlscheid as a retained expert. *See generally* **Exhibit A**, Plaintiff's Fed. R. Civ. P. 26(a)(2) Expert Witness Disclosures. Mr. Wohlscheid prepared a written report which contains a complete statement of all the opinions he is expected to offer at trial. *See* **Exhibit B**, Forensic Report and Repair Plan ("Report"). Mr. Wohlscheid opines that hail damaged the TPO roof on April 1, 2025 and suggests that the damaged TPO roof caused water damage to the property interior. *See id.*, p. 7.

SICSC deposed Mr. Wohlscheid on March 18, 2026. That deposition revealed numerous misstatements and outright falsehoods in Mr. Wohlscheid's Report. For example, the Report states that Mr. Wohlscheid's opinions are based on an "On site walk-through consisting of visual observations, instrument assisted non-invasive evaluation, and photo documentation of the current damages and conditions present at the above-mentioned property." **Exhibit B**, p. 2. Photographs, purportedly of Mr. Wohlscheid's inspection, were included in the Report. *See id.,* pp. 21-38 (titled

2

"Inspection Photos."). The Report goes on to describe the condition of the TPO Roof, stating:

- During our inspection, we observed that the roof had been previously covered with a plastic tarp or sheet, which was largely removed before our assessment took place.
- Circular shaped impacts, consistent with the size of hail reported on the date loss, were noted on the subject roof covering.
- One section of cap flashing had become dislodged due to the storm.

*Id.*, p. 5.

However, Mr. Wohlscheid later admitted that he had never been on the subject roof. *See* **Exhibit C**, 37:21-23. Further, no one under Mr. Wohlscheid's supervision inspected the roof. *See id.*, 18:11-22; *see also id.,* 9:9-11 ("the roof was actually covered up, so we were not able to see, ourselves, what the condition was of the roof").[2] The photographs in Mr. Wohlscheid's Report were not taken by him or anyone under his supervision. *See id.*, 32:19-24. They were not taken during Mr. Wohlscheid's inspection. In fact, Mr. Wohlscheid does not even know who took the photographs that are included with his Report nor the date they were taken. *See id.*, 70:3-8.[3] Several photographs in the Report include chalk marks, purporting to identify hail damage. Mr. Wohlscheid does not know who applied that chalk. *See id.*, 23:16-21. Accordingly, Mr. Wohlscheid cannot know the methodology that was used to apply the chalk to the roof.

Rather than reviewing the facts and applying his expertise, skill, and knowledge to those facts, Mr. Wohlscheid essentially opines that because there was a storm on April 1, 2024 and someone put blue circles on the roof, the roof was damaged by hail. This is not an expert opinion. At best, it is lay opinion within the knowledge and skill of the jury; at worst, it is so grossly misleading as to be designed to deceive the jury. In either case, Mr. Wohlscheid's opinions are

---

[2] Mr. Schneider is a building inspector who inspects buildings for Mr. Wohlscheid. *See* **Exhibit C**, 12:23-13:7, 16:2-17.

[3] Mr. Wohlscheid testified the photographs were provided to him by Sucha Sauda's counsel and counsel told him the photographs were taken in 2025 after the date of loss. *See* **Exhibit C**, 21:13-22:12. After prompting by SICSC's counsel, Mr. Wohlscheid acknowledged the date of loss was represented as April 1, 202**4** and, therefore, the photographs must have been taken in 2024 but he did not know when. *See id.*, 22:13-23:1.

4908-0402-3465.3

improper and should be excluded.

## II.   <u>Legal Standard</u>

Expert witness opinions must satisfy Fed. R. Evid. 702, which provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

*Id.*

"The expert must be qualified to give his opinions on the subject through knowledge, skill, experience, training, or education, and the district court must consider (1) the factual basis of the expert's opinion, (2) the reliability of the method and application, and (3) the relevance of the testimony." *Johnson*, 702 F.Supp.2d at 1099 (cleaned up). The trial court serves as the gatekeeper for determining whether expert testimony is reliable and relevant. *See Daubert v. Merrell Dow Pharmaceuticals*, Inc. 509 U.S. 579, 590-93 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999). "To satisfy the reliability requirement, the party offering the expert testimony 'must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid.'" *Refrigeration Supplies, Inc. v. Acadia Ins. Co.*, 507 F. Supp. 3d 1096, 1101 (E.D. Mo. 2020) (citing *Barrett v. Rhodia, Inc.* 606 F.3d 975, 980 (8th Cir. 2010)). "To satisfy the relevance requirement, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue." *Id.*

### III.   Arguments

#### A.   *Mr. Wohlscheid's Opinion that Hail Damaged the TPO Roof is Based on an Unreliable Factual Foundation.*

Under *Daubert*, the Court must make a "preliminary assessment of whether the reasoning or methodology underlying" the expert's testimony is scientifically valid and properly applied to the facts. *Daubert*, 509 U.S. at 592. Expert opinions that are based upon an unreliable factual foundation or speculative are properly excluded. *See Lancaster v. BNSF Railway Company*, 75 F.4th 967, 970 (8th Cir. 2023) (citations omitted). Mr. Wohlscheid's opinion that hail damaged the TPO roof on April 1, 2024 should be excluded because it is built on an unreliable factual foundation.

Mr. Wohlscheid, nor anyone under his supervision, inspected the subject roof. **Exhibit C**, 18:11-22, 37:21-23. The photographs in Mr. Wohlscheid's Report were not taken by him or anyone under his supervision. *See id.*, 32:19-24. He does not even know who took them or when they were taken. *See id.*, 70:3-8. Mr. Wohlscheid does not know who applied the blue chalk observed in some of the photographs, purporting to identify hail damage. *See id.*, 23:16-21. Accordingly, Mr. Wohlscheid cannot know the methodology that was used to apply the chalk to the roof. While Mr. Wohlscheid testified about the methodology he would have applied to identifying hail damage on a roof (*see id.*, 71:7-72:5, 72:20-73:2) – that testimony is irrelevant because Mr. Wohlscheid did not apply that methodology in this case. He did not identify the purported hail damage by marking the roof with chalk and there is no way of knowing the methodology used by the individual who placed the chalk shown in the photographs.

Mr. Wohlscheid testified that the size of the hail marked by blue chalk was consistent with the size of the hail reported by the National Weather Service on April 1, 2024. *See id.*, 116:3-7. However, he then admitted that there were no tape measures in the photographs he relied upon and

that his opinion as to the size of hail impacts <u>was not based on a reasonable degree of certainty</u>. *See id.*, 54:8-16, 56:4-19. Further, Mr. Wohlscheid has no training or experience in meteorology. *See id.*, 33:6-8. In essence, Mr. Wohlscheid simply received photographs from counsel, was told the photographs were taken after the date of loss and assumed the blue chalk in those photographs depicted hail damage. *See, e.g., id.*, 72:17-73:14, 74:11-18 (areas without chalk "likely" to show dents).

This is not a proper foundation for expert testimony. *See Lancaster*, 75 F.4th at 970 (expert opinion properly excluded when it was not based on sufficient facts or data); *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007) ("An expert's opinion should be excluded only if that opinion is so fundamentally unsupported that it can offer no assistance to the jury."). Mr. Wohlscheid applied no scientific principles to the facts. He is simply lending the "aura of expertise" to observations that can be gleaned from a photograph. *RightChoice Managed Care, Inc. v. Hospital Partners, Inc.*, 2021 WL 3627938, at *2 (W.D. Mo. 2021).[4] Furthermore, Mr. Wohlscheid's testimony will mislead the jury because they are likely to believe that Mr. Wohlscheid's opinions are based on his own observations, data collection, and scientific assessment (as represented throughout his Report), when they are not. Accordingly, his opinions should be excluded.

---

[4] Mr. Wohlscheid also cannot base his expert opinion solely on weather data. First, he is not qualified to opine on the weather. *See* **Exhibit C**, 33:6-8; *Kar v. Safeco Insurance Company of America*, 2025 WL 2305773, at *4 (E.D. Mo. 2025). Second, nothing in Mr. Wohlscheid's report indicates that the fact that hail fell on April 1, 2024 alone, without consideration of any other facts or data, means the TPO roof suffered hail damage. Such a conclusion also would be inconsistent with Mr. Wohlscheid's own methodologies. *See* **Exhibit C**, 71:7-72:5, 72:20-73:2, 92:17-93:1. Finally, Courts who have permitted engineering experts opining on hail damage to consider weather data have done so when the expert considered weather in conjunction with a property inspection and application of a particular methodology for identifying hail damage. *See Kim v. Nationwide Mutual Insurance Company*, 614 F.Supp.3d 475, 488 (N.D. Tex. 2022). No scientific methodology or legal authority permits an expert to opine that a structure was damaged by hail based solely on the fact that hail fell.

6

**B.** ***Mr. Wohlscheid's Opinion that Hail Damaged the TPO Roof Should be Excluded Because He Did Not Apply the Very Testing He Recommends***.

Mr. Wohlscheid testified that to determine whether there is hail damage to a TPO roof, it is "best to take [] core samples, and then do the testing." **Exhibit C**, 92:17-93:1. His Report states that "instrument assisted non-invasive testing" was done. **Exhibit B**, p. 2. However, Mr. Wohlscheid admitted that no core samples were taken, and no instrument testing was done. *See* **Exhibit C**, 80:19-21, 48:2-5. Further, as noted above, Mr. Wohlscheid did not apply his chalk-based methodology to identify the hail damage on this roof because neither he nor anyone under his supervision have ever inspected this roof.

Because Mr. Wohlscheid did not apply the very methodology he says should be used to identify hail damage on a TPO roof, his opinions should be excluded. *See Johnson v. Avco Corp.*, 702 F.Supp.2d 1093, 1105 (E.D. Mo. 2010) (expert excluded when he did not apply proper methodology).

**C.** ***Mr. Wohlscheid's Admits He Does Not Know the Cause of the Interior Water Intrusion.***

Mr. Wohlscheid's Report documents water damage to the interior of the building, opines that the hail damage to the TPO roof is the cause of that damage, and provides recommendations for remediating that damage. *See* **Exhibit B**, p. 7, 38. If Mr. Wohlscheid's opinion that the TPO roof was damaged by hail is excluded, his opinion that hail damage to the TPO roof caused water intrusion also should be excluded because without hail damage to the TPO roof, there is no foundation or causal connection to the hail event and water intrusion. But even if Mr. Wohlscheid is permitted to testify that the TPO roof was damaged by hail, his opinion that the hail damage to the roof also caused interior water damage should be excluded nonetheless.

When asked to differentiate between roof damage caused by hail versus damage caused by wear and tear, Mr. Wohlscheid testified he would look for gaps and cracks in the seals on the roof,

7

as those are indicators of damage caused by wear and tear. *See* **Exhibit C**, 84:1-12. Neither Mr. Wohlscheid nor anyone under his supervision inspected the roof, so no one checked the roof for gaps or cracks in the seals. *See id.*, 84:13-18. Accordingly, Mr. Wohlscheid cannot say whether the source of the water intrusion at the property was attributable to gaps or cracks in seals or hail. *See id.*, 84:19-85:2. Notably, Sucha Sauda's corporate representative testified that the water intrusion stopped after he went on the roof and sealed gaps on the roof – the very types of gaps Mr. Wohlscheid opined would be evidence of wear and tear. *See* **Exhibit D**, 38:17-39:17. Mr. Wohlscheid also did not know whether the interior leaks corresponded with areas where a third party had marked purported hail damage with blue chalk. *See* **Exhibit C**, 85:3-14.

Because Mr. Wohlscheid failed to consider whether water intrusion at the property was caused by something other than hail, such as gaps, and failed roofing seams and seals, and he failed to correlate purported damage on the roof with areas of water intrusion, his opinion that hail damage to the TPO roof caused interior water intrusion is pure speculation. *See Bliv, Inc. v. Charter Oak Fire Insurance Company*, 159 F.4th 539, 544 (8th Cir. 2025) (Expert opinion small punctures in TPO membrane caused water intrusion excluded when expert failed to consider failed roofing seams as alternative cause of water intrusion and failed to take roof samples to confirm existence of punctures.). This opinion amounts to Mr. Wohlscheid simply telling the jury it is "possible" the water intrusion was caused by hail. But "[w]e do not allow witnesses to tell juries that in their expert opinion something happened simply because it is possible." *Johnson*, 702 F.Supp.2d at 1108–09.

Mr. Wohlscheid's testimony relating to interior water damage should be excluded.

4908-0402-3465.3

**D.**      ***Should Mr. Wohlscheid be Permitted to Testify, he Should be Prohibited from Misleading the Jury about His Inspection or Methodology.***

If the Court finds that Mr. Wohlscheid can provide any expert opinion in this case, the Court should prohibit him from misleading the jury.

As noted above, Mr. Wohlscheid's Report falsely represents that he inspected the subject roof and took photographs during that inspection *See* **Exhibit B**, p. 2, 21-38 (section titled "Inspection Photos."). It describes observations purportedly made during "our inspection," including "[c]ircular shaped impacts, consistent with the size of hail reported on the date loss," and dislodged flashing. *Id.*, p. 5. But Mr. Wohlscheid has never been on the subject roof, nor has anyone under his supervision. *See* **Exhibit C**, 9:9-11, 18:11-22, 37:21-23. The photographs in Mr. Wohlscheid's Report were not taken by him or anyone under his supervision. *See id.*, 32:19-24. Accordingly, Mr. Wohlscheid made no observations during an inspection. Because Mr. Wohlscheid does not know who marked the roof with chalk, he cannot tell the jury what methodology was used to place those markings. *See id.*, 23:16-21. Further, he cannot say with certainty whether the hail impact marks are "consistent with the size of hail reported on the date of loss." *Id.*, 54:8-16, 56:4-19.

Mr. Wohlscheid cannot mislead the jury by purporting to have conducted an actual inspection and investigation as to the cause of loss when he did no such thing. Thus, should Mr. Wohlscheid be permitted to testify, in any capacity, his testimony must be limited to the actions Mr. Wohlscheid undertook related to this case.

**IV.    Conclusion**

Mr. Wohlscheid's opinions fall far below the standard imposed by *Daubert.* He did not review reasonable facts and data and apply those facts and data to any scientific methodology; he did not actually conduct any expert opinion or analysis in this case. At best, he will tell the jury

9

what he sees in photographs – observations the jury can make for themselves. Permitting Mr. Wohlscheid to lend the "aura of expertise" to these lay observations is improper. *RightChoice Managed Care, Inc.*, 2021 WL 3627938, at \*2. Accordingly, Mr. Wohlscheid's opinions should be excluded.

**WHEREFORE**, Defendant Selective Insurance Company of South Carolina prays for an order of this Court granting Defendant's Motion, striking or excluding all expert witness testimony and opinions of Plaintiff's proposed expert Steven J. Wohlscheid, and for such other and further relief as the Court deems just and proper under the circumstances.

Dated: May 28, 2026.                                Respectfully submitted:

                                                    */s/ Anna M. Berman*
                                                    Anna M. Berman            #61637 MO
                                                    KUTAK ROCK LLP
                                                    2405 Grand Boulevard, Suite 600
                                                    Kansas City, MO 64108
                                                    (816) 960-0090 Telephone
                                                    (816) 960-0041 Facsimile
                                                    anna.berman@kutakrock.com

                                                    and

                                                    Hailey H. Merz            #77774 MO
                                                    KUTAK ROCK LLP
                                                    300 S. John Q. Hammons Parkway, Suite 800
                                                    Springfield, MO 65806
                                                    (417) 720-1410 Telephone
                                                    (417) 720-1411 Facsimile
                                                    Hailey.Merz@kutakrock.com
                                                    **ATTORNEYS FOR DEFENDANT**
                                                    **SELECTIVE INSURANCE COMPANY**
                                                    **OF SOUTH CAROLINA**

4908-0402-3465.3

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2026, a true and correct copy of the above and foregoing *Memorandum in Support of Daubert Motion to Exclude the Opinions of Steven J. Wohlscheid* was filed with the Clerk of the United States District Court of Eastern Missouri by using the CM/ECF electronic filing system, which will send notification of such filing to the below counsel of record.

*/s/ Anna M. Berman*
Attorney for Defendant

11

4908-0402-3465.3