UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SUCHA SAUDA LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25 CV 1025 CDP |
| | ) | |
| SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Sucha Sauda, LLC, owns a commercial building insured by defendant Selective Insurance Company of South Carolina. Plaintiff asserts that the building sustained a covered loss totaling more than $239,000 when its roof was damaged during a hailstorm in April 2024, with resultant interior water damage. Plaintiff brings this action asserting that Selective breached the policy of insurance when it refused to pay full benefits on the claim. Plaintiff also claims that Selective's refusal to pay was vexatious. The case is set for jury trial beginning October 5, 2026.

Plaintiff now moves for partial summary judgment, arguing that Selective's liability is conclusively established by its recent failure to pay $266.25 for admitted covered losses that exceed the deductible, and that therefore trial should proceed on damages only. Selective opposes the motion with evidence that it paid the $266.25

to plaintiff's counsel. For its part, Selective moves to exclude the opinion testimony of plaintiff's causation expert, professional engineer Steven J. Wohlscheid. For the reasons that follow, I will deny plaintiff's motion for partial summary judgment and grant Selective's motion to exclude Wohlscheid's expert opinion testimony.

## I. Background

Historical weather reports show that a hail-producing storm moved through the St. Louis area on April 1, 2024. Plaintiff's commercial property was in the vicinity of the storm. After another storm in the area occurred in late June 2024, an employee who worked at the building located on the property reported some trickling water "here and there," which prompted plaintiff to investigate for damage. Upon discovering damage to the building's outside overhang, plaintiff filed an insurance claim with Selective, asserting a weather-related loss.

### A. Claim-Processing

On July 16, 2024, Selective's adjuster on the claim inspected the interior of the building and found ceiling tiles damaged by water leaking through the roof. Selective's field inspector inspected the roof on August 1 and found non-storm-related damage to the roof and gutters, but no wind or hail damage. He found storm-related damage to nine air conditioning units located on the roof. Selective estimated the cost of repairs to those units at $1742.65.

On August 8, 2024, Selective issued a coverage denial letter to plaintiff stating that there was no wind or hail damage to the roof and that the water

penetration to the interior of the building was the result of natural wear and tear to the roof material. Because the policy excluded coverage for wear and tear to roof surfacing, and the policy did not cover interior damage from roof leaks if there was not a covered cause of loss to the roof, Selective declined coverage for plaintiff's claim. The denial letter did not mention the observed damage to the air-conditioning units.

At plaintiff's counsel's request, Selective caused the building to be reinspected on March 13, 2025. That inspection likewise found no wind or hail damage to the roof, but it found that exposed light-gauge metal components were dented from hail impacts that occurred over the life of the components. Selective provided the reinspection report to plaintiff on May 15, 2025, and included the previous estimate of $1742.65 to repair the reported damage, which estimate fell below the $5000 deductible set out in the policy. That estimate, however, did not cover all hail-related soft-metal damage that was identified in the reinspection report.

Plaintiff then filed this action on July 10, 2025.

In January 2026, Selective solicited the opinion of an estimating expert, who estimated that the cost to repair the damaged soft-metal components on plaintiff's roof was $4518.22, which amount remained below the $5000 deductible. When asked to confirm that the estimate included all the damaged soft-metal components that the March 2025 reinspection identified, the estimating expert issued a revised

soft-metals estimate on March 21, 2026, that totaled $5266.25. On June 15, 2026, Selective delivered to plaintiff's counsel payment in the amount of $266.25, which represented the amount of the revised estimate that exceeded the $5000 deductible.

B. Expert Witness Wohlscheid

On December 31, 2025, plaintiff disclosed Steven J. Wohlscheid, a professional engineer, as an expert witness to testify at trial to his opinions that hail from the April 1, 2024, storm proximately caused damage to the building's roofing system, HVAC units, and other building elements, and that full replacement of the roofing system and the building's damaged components was necessary. Wohlscheid based his opinions on information he obtained from a forensic engineering inspection his team conducted at the property on September 10, 2025.

In his report,[1] Wohlscheid stated that visual observations, instrument assisted non-invasive evaluations, and photo documentation of damages and conditions of the building were obtained during a "field walk-through" of the property on September 10, 2025. Wohlscheid attached 47 "inspection photos" to his report, including several photos of a surface with circles and other markings made with blue chalk, which he asserted showed hail damage to the building's roof. In his report, Wohlscheid opined that, upon review of the information obtained from the

[1] The report is dated both September 26 and September 29, 2025. (ECF 51-2, Report at pp. 1, 13.) The report also states that the weather event causing the damage occurred on April 1, 2025. (*See id.* at pp. 1, 4, 8.) Wohlscheid testified at his deposition that the April 1, 2025, reference was a typo as the weather event actually occurred on April 1, 2024. (ECF 51-3, Wohlscheid dep. at p. 46.)

September 10 walk-through, historical weather data, and building codes:

- The hail event of April 1, 2024, was the proximate cause of the damage documented during the field inspection.
- The damage on the TPO roof system was consistent with that weather event.
- The roof covering needs replacement.
- The damaged ceiling tiles of the portico and of the interior need replacement.
- The damaged functioning HVAC units need replacement.
- Damaged interior components need replacement.
- Missing or damaged materials need replacement.

(ECF 51-2, Report at p. 8.)

The walk-through field investigation Wohlscheid refers to in his report was conducted on September 10, 2025, by Dave Schneider, a building inspector and general contractor. Schneider had earlier contacted Wohlscheid regarding this case, and Wohlscheid agreed to work with Schneider to perform a forensic study of the condition of plaintiff's roof. Wohlscheid never went to plaintiff's property himself, nor did he personally inspect the roof.

When Schneider visited the property on September 10, 2025, he did not see or inspect the actual condition of the building's roof because it was covered with a tarp or new covering. He did not peel back the new covering or otherwise expose the condition of the roof under that covering. He did not inspect any seams or other potential entry points for water penetration. He did not take any core samples of the roof material. Schneider did not take photos of the roof, but he took photos of the building's interior ceiling tiles. He did not conduct any "instrument assisted non-

invasive evaluations" during his visit, nor did he use any such instruments. The September 10 visit was Schneider's only on-site inspection of the property. After that visit, Schneider talked to Wohlscheid about his findings but did not provide them in writing. Although Wohlscheid testified that he relied on Schneider's reported inspection to form his own expert opinions, Wohlscheid neither mentions Schneider in his report nor attributes any information to him.

At his deposition, taken March 18, 2026, Wohlscheid testified that the chalk-based photographs attached to his report provided the sole basis for his expert opinion that hail damaged the roof. Wohlscheid testified that he does not know who took those photos, when they were taken, or who applied the chalk that was depicted in them. He testified to his understanding that plaintiff's counsel had given those photos to Schneider who then gave them to Wohlscheid.

## II. Discussion

A. Plaintiff's Motion for Partial Summary Judgment

In its motion for partial summary judgment, plaintiff avers that Selective's own witnesses and evidence establish that the property suffered a covered loss that exceeded the $5000 deductible, which precluded Selective from completely denying coverage on plaintiff's claim and demonstrates Selective's breach of the insurance contract. Plaintiff contends that such breach is further demonstrated by Selective's failure to pay the admitted $266.25 that exceeded the deductible. Finally, plaintiff argues that Selective's failure to include any information in its August 2024 denial

letter regarding damage to the building's roof accessories, failure to include the cost of repairs to damaged soft-metal components in its original estimate sent to plaintiff in May 2025, and failure to tender the $266.25 in excess of the deductible shows Selective's vexatiousness in denying the claim and refusing to pay. Plaintiff argues that it is entitled to summary judgment on the issue of liability, with trial to proceed on damages only, because the evidence indisputably shows Selective's liability for breach of contract and vexatious refusal to pay.

As set out above, Selective responded to plaintiff's motion with evidence that it issued payment to plaintiff in the amount of $266.25, which was delivered by check to plaintiff's counsel on June 15, 2026.

Upon review of plaintiff's motion for partial summary judgment and the materials and briefs submitted in support of each party's position, and viewing all reasonable inferences in favor of Selective as the non-moving party,[2] I conclude that there are genuine issues of material fact in dispute between the parties, *including but not limited to*: 1) whether plaintiff was damaged by Selective's alleged breach given that a) Selective paid to plaintiff's counsel the $266.25 that plaintiff contends is owed on its claim, and b) all the costs and charges set out in the March 2026

---

[2] In ruling summary judgment motions, I view the facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Plaintiff, as the moving party, has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

revised estimate may not be covered under the policy, which would bring the estimate below the $5000 deductible; 2) whether and to what extent any damage to plaintiff's building was on account of a covered loss that occurred within the insured period, or whether any policy exclusion precludes recovery on the claim; 3) whether and to what extent interior damage to the building was caused by a covered event under the policy; and 4) whether Selective acted without cause or reasonable excuse in denying and refusing to pay on plaintiff's claim, including in its failure to include the soft-metal damage in a) its coverage determination, and b) its initial estimates for repairs to soft-metal components.

On the information before the Court, I cannot say that plaintiff has established its right to judgment on Selective's liability with such clarity as to leave room for no controversy and that Selective is not entitled to prevail on that issue under any discernable circumstances. *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). Plaintiff's motion for partial summary judgment is denied.

B. Selective's Motion to Exclude Testimony of Expert Witness Wohlscheid

The admission of expert testimony is governed by Rule 702, Federal Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> > a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a

> fact in issue;
>
> b) the testimony is based upon sufficient facts or data;
>
> c) the testimony is the product of reliable principles and methods; and
>
> d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702 (amended Dec. 1, 2023)[3]; *see also David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012). The proponent of expert opinion and testimony, here plaintiff Sucha Sauda, must satisfy each criterion of Rule 702 by a preponderance of the evidence.

The purpose of a motion to exclude expert testimony is to ensure that only reliable and relevant expert testimony is presented to a jury. *Russell v. Whirlpool Corp.,* 702 F.3d 450, 456 (8th Cir. 2012). While a party's mere disagreement with an expert's assumptions and methodologies does not warrant exclusion, *David E. Watson*, 668 F.3d at 1015, I must nevertheless be satisfied that the expert has a sufficient basis for his opinion and that he reliably applied the methodology to the facts of the case. Fed. R. Evid. 702 advisory committee's note (1) to 2023 amendment. *See also Webb v. City of Maplewood*, No. 4:16CV1703 CDP, 2021

[3] The purpose of the December 2023 amendments was to clarify that the proponent of expert testimony must meet all of Rule 702's substantive standards for admissibility by a preponderance of evidence and, further, to correct prior, inaccurate applications of Rule 702 given that "many courts have [incorrectly] held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility." Fed. R. Evid. 702 advisory committee's note (1) to 2023 amendment.

WL 5371247, at *2 (E.D. Mo. Nov. 18, 2021) (an otherwise qualified expert may not simply offer conclusory opinions without providing a basis for the conclusions). "[E]ach expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." Fed. R. Evid. 702 advisory committee's note (2) to 2023 amendment.

I have broad discretion in determining whether expert testimony should be allowed, *Russell,* 702 F.3d at 456, and I should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility. *Masters v. City of Independence, Mo.*, 998 F.3d 827, 838 (8th Cir. 2021); *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006). An expert's opinion need not be proven correct nor resolve an ultimate issue of fact in order to be admissible. *Bonner,* 259 F.3d at 929; Fed. R. Evid. 702 advisory committee note (1) to 2023 amendment. But it cannot be speculative, unsupported by sufficient facts, or contrary to the facts of the case. *Masters*, 998 F.3d at 838. If the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury, it must be excluded. *Bonner*, 259 F.3d at 929-30.

Against that backdrop, I will exclude the opinion testimony of plaintiff's causation expert, Steven J. Wohlscheid. On the record and evidence submitted, I cannot find that plaintiff met its burden of establishing by a preponderance of the evidence that Wohlscheid's opinions are reliable, that is, that they have a sufficient factual basis and that he reliably applied an accepted methodology in reaching his

conclusions. Because those questions go to the admissibility and not the weight of Wohlscheid's opinions, they are for me to resolve instead of a jury. *See* Fed. R. Evid. 702 advisory committee's note (1) to 2023 amendment.

Wohlscheid did not visit the property. His opinions regarding the condition of the roof, the interior of the building, and the cause of the damage thereto were largely based on statements made to him by his inspector, Dave Schneider, and a series of photographs that Schneider provided to him. While an expert can rely on information collected by others, it must be reasonable to do so in his field. *Bliv, Inc. v. Charter Oak Fire Ins. Co.*, 159 F.4th 539, 543 (8th Cir. 2025). Here, Schneider visited the property more than 17 months after the alleged storm; did not observe, inspect, or examine the condition of the roof; did not determine the roof's construction; and did not test or take samples for testing to detect damage or moisture content. Schneider provided no written report or written findings from his inspection. He did not take the chalk-marked roof photographs that he provided to Wohlscheid, was not present when they were taken, nor applied the chalk markings depicted in them. Indeed, although Wohlscheid relied on those photos in rendering his opinions, he admittedly did not know who took the photos, when, or under what circumstances. In view of all the above, it cannot be said that Wohlscheid's reliance on Schneider's factually scant information was reasonable.

In addition, while Wohlscheid testified that maintenance of a roof is important to prevent water penetration, he was not aware of the maintenance history

of the roof here. He also reported and testified that TPO roofing materials and their thickness vary and that such variances are relevant to a roof's susceptibility to hail damage. (ECF 51-2, Report at p. 6; ECF 51-3, Wohlscheid dep. at pp. 79-80.) Although he testified to the general makeup of a TPO roof, which was the type of roof on plaintiff's building, he did not know the construction details of plaintiff's roof, such as its components or their thickness. He testified that his only actual knowledge of the roofing material here was that there was an insulation board under the surface. As to the remainder of the roof's construction, he could only testify to what he thought and understood based on general TPO roof construction. (ECF 51-3, Wohlscheid dep. at pp. 79-80.)

Regarding damage to the building's interior, Wohlscheid testified that Schneider observed water-stained ceiling tiles as shown by his photographs, but that he did not conduct any investigation into possible sources of water penetration, such as inspecting or examining the seals on the roof. Although Wohlscheid acknowledged that the condition of seals is important with regard to water penetration, the seals here were not the focus of the inspection. Consequently, Wohlscheid could not rule out that the water penetration to the interior of plaintiff's building came through a seal. (ECF 51-3, Wohlscheid dep. at pp. 82-85.) *Cf. Bliv, Inc.*, 159 F.4th at 544 (expert could not exclude possibility of failed seam as cause of water intrusion because he admittedly did not "probe every seam on the roof").

Finally, Wohlscheid admits that the chalk-based photographs he relied on to

show actual hail damage to the roof were taken on an unknown date by an unknown person using unknown inspection criteria pursuant to a methodology that he could only surmise. In plaintiff's brief in response to Selective's motion, counsel avers without evidentiary support that the photographs were taken in October 2024 by a roofing company. It is well established, however, that unsworn statements of counsel are not evidence. Regardless, as set out above, at the time Wohlscheid rendered his opinions in September 2025 and testified at his deposition in March 2026, he did not know the source, date, or circumstances under which the photos were taken. Counsel's belated revelation of the photographs' source and history does not convert Wohlscheid's fundamentally unsupported opinions to reliable ones.

In sum, the only known and arguably relevant factual data that Wohlscheid reviewed for his causation opinions in this case were weather reports showing that a hailstorm occurred in the vicinity of plaintiff's property on April 1, 2024. That information alone does not satisfy the requirements of Rule 702 for Wohlscheid's proffered expert testimony here that hail from that storm caused damage to plaintiff's building. *See Bliv, Inc. v. Charter Oak Fire Ins. Co.*, No. 4:22CV869 HEA, 2023 WL 8715762, at *3 (E.D. Mo. Dec. 18, 2023), *aff'd*, 159 F.4th 539 (8th Cir. 2025). This is especially so since there is no evidence that Wohlscheid has the education, training, and experience to testify whether the weather data he reviewed established or supported a finding that damaging hail fell on plaintiff's building on April 1, 2024. *See Kar v. Safeco Ins. Co. of Am.*, No. 4:23-CV-207 HEA, 2025 WL

2305773, at *5 (E.D. Mo. Aug. 8, 2025) (citing *Shipp v. Murphy*, 9 F.4th 694, 701 (8th Cir. 2021) (area of witness's competence must match the subject matter of that witness's testimony)).

Because I cannot find that Wohlscheid's expert opinion testimony is based upon sufficient facts or data, is the product of reliable principles and methods, or reflects a reliable application of the principles and methods to the facts of the case, I will grant Selective's motion and exclude Wohlscheid's expert opinion testimony at trial.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Sucha Sauda, Inc.'s Motion for Partial Summary Judgment [52] is **DENIED**.

**IT IS FURTHER ORDERED** that defendant Selective Insurance Company of South Carolina's Motion to Exclude the Opinions of Steven J. Wohlscheid [50] is **GRANTED**.

Catherine D Perry
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 17th day of August, 2026.